## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IOT INNOVATIONS LLC, | |
| Plaintiff, | Civil Action No. 2:25-cv-01135 |
| v. | **JURY TRIAL DEMANDED** |
| BH SECURITY, LLC d/b/a BRINKS HOME, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this complaint against BH Security, LLC d/b/a Brinks Home ("Brinks Home" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a patent infringement action against Defendant for infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available as provided below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,379,464 | Personal Digital Gateway | https://patentcenter.uspto.gov/applications/10859735 |
| B. | 7,539,212 | Method And Apparatus For Mac Layer Inverse Multiplexing In A Third Generation Radio Access Network | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7539 |
| C. | 7,593,428 | Apparatus, And Associated Method, For Forming, And Operating Upon, Multiple-Checksum-Protected Data Packet | https://patentcenter.uspto.gov/applications/11621545 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| D. | 7,643,423 | Dynamic Channel Allocation in Multiple-Access Communication Systems | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdf RedirectDownload/7643423 |
| E. | 7,974,260 | Method of Transmitting Time-Critical Scheduling Information Between Single Network Devices in a Wireless Network using Slotted Point-to-Point Links | https://ppubs.uspto.gov/pubwebapp/ authorize.html?redirect=print/ pdfRedirectDownload/7974260 |
| F. | 7,974,266 | Method and Apparatus for Classifying IP Data | https://ppubs.uspto.gov/pubwebapp/authorize.html? redirect=print/pdfRedirectDownload/7974266 |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    BH Security, LLC d/b/a Brinks Home is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 1990 Wittington Place, Dallas, Texas 75234.

5.    Brinks Home may be served through its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Inc. located at 211 E. 5th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-5 as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§

271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.    Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.    Specifically, Brinks Home intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

11.    Brinks Home maintains regular and established places of business in this District.

12.    Brinks Home offers products and services and conducts business in the Eastern District of Texas.  For example, and as depicted below, Brinks Home promotes, advertises, and provides its services within this District:

## Americans Announce Brinks Home as Official Home Security Partner

Elisa Schmitt
Oct 28, 2022

**Allen/Dallas, TX** – The Allen Americans Professional Hockey Club, 4-time league champions and affiliate of the NHL's Ottawa Senators, are proud to announce a new partnership with Brinks Home™. The agreement will make DFW-based Brinks Home the official home security partner of the Americans, and will include multiple fan-engagement benefits for Season Ticket Members throughout the season.

"We're thrilled to have Brinks Home as a partner moving forward," said Jeff Wodka, Americans Vice President of Sponsorship Sales. "We've been nothing but impressed with their cutting-edge products and services and we encourage all of our fans who are considering home security to reach out to Brinks Home."

As part of the agreement, Brinks Home will have multiple activations throughout the CUTX Event Center, including the all new Brinks Home™ Security Zone. The Brinks Home Security Zone will be the new name for the east side of the rink, the side that the Americans defend twice. Brinks Home will also have a presence at several Americans games, offering fans opportunities to win prizes and learn more about the benefits of their products and services.

**Exhibit 2**.

13.      In addition, to conduct this business, Brinks Home employs a number of individuals within this District, including but not limited to, corporate recruiters, account managers, security consultants, systems engineers, and technical support.  These individuals' employment with Brinks Home is conditioned upon and based on their residence and continued residence within the District to further the specific infringing business activities of Brinks Home within the District.

14.      On information and belief, Brinks Home also leases, owns, stores, services, and/or operates real and personal property including, but not limited to, vehicles and other equipment, and provides and funds office space and equipment, vehicles, and other equipment to its employees, exclusive and non-exclusive contractors, agents, and affiliates, within this District for the specific purposes of offering, providing, and/or supporting its infringing products and services

within this District.

15.    Brinks Home's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Brinks Home affirmatively acted to make permanent operations within this District to service its customers.  *See In re: Cray Inc.*, 871 F.3d 1355, 1365–66 (Fed. Cir. 2017) (citing *In re: Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985)).  Brinks Home employs and contracts with those employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., with the specific requirement that those individuals and entities maintain a presence in the District to service customers within the District.  *See, e.g.*, *IoT Innovations LLC v. Monitronics Int'l, Inc.,* No. 2:22-cv-0432-JRG-RSP, 2023 U.S. Dist. LEXIS 174400, at *12 (E.D. Tex. Sep. 10, 2023).[1]  At least through these employees, Brinks Home does its business in this District through a permanent and continuous presence.  *See In re: Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

16.    Brinks Home ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within the District.

17.    Defendant has also previously been a party to multiple litigations asserting patent infringement in this District, including *IoT Innovations LLC v. Monitronics Int'l, Inc.,* No. 2:22-cv-0432-JRG-RSP (E.D. Tex.), filed November 4, 2022; *IoT Innovations LLC v. Monitronics Int'l, Inc.*, No. 23-cv-00016 (E.D. Tex.), filed January 13, 2023; *IoT Innovations LLC v. Monitronics Int'l Inc.*, No. 2:23-cv-00177, filed April 18, 2023; and *IoT Innovations LLC v. BH Security LLC*

---

[1] Monitronics International, Inc. is the former legal name of Defendant.  As shown Defendant's Amendment to its Registration in Texas, **Exhibit 3**, Defendant's legal name changed to BH Security, LLC at least as of October, 2023.

*d/b/a Brinks Home*, No. 2:25-cv-00333-JRG-RSP (E.D. Tex.), filed April 2, 2025.

18.    Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

19.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20.    Based upon public information, Brinks Home owns, operates, advertises, and/or controls the website https://brinkshome.com/ through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services. *See* **Exhibit 1**.

21.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems.

22.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the Accused Products, which include, but are not limited to, Brinks Home Panels such as IQ Panel 2, IQ Panel 4, IQ4 Hub Panel, IQ Panel, Lynx Touch L7000 Panel, Lynx Touch L5210 Panel, Concord 4 Panel, Simon XTi Panel, GC2 GoControl Panel, GC2e Panel, Simon XT, IQ Remote, Edge, Edge Remote Keypad, GC3/GC3E, Lynx Plus L3000 Panel, Doorbell cameras, Indoor cameras, Outdoor cameras, Door locks, Thermostats, Smart lights and Switches, Garage doors and Controllers, and associated hardware, software and applications (the "Accused Products").

23.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control.

24.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I.     INFRINGEMENT OF U.S. PATENT NO. 7,379,464

25.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

26.     The USPTO duly issued U.S. Patent No. 7,379,464 (hereinafter, the "'464 patent") on May 27, 2008, after full and fair examination of Application No. 10/306,504, which was filed on November 27, 2002.  *See* '464 patent at 1.

27.     IoT Innovations owns all substantial rights, interest, and title in and to the '464 patent, including the sole and exclusive right to prosecute this action and enforce the '464 patent against infringers and to collect damages for all relevant times.

28.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '464 patent.

29.     The claims of the '464 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

30.     The written description of the '464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31.     Defendant has directly infringed one or more claims of the '464 patent by using, providing, supplying, or distributing the Accused Products.

32.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '464 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,379,464).

33.     For example, as detailed in <u>Exhibit A</u>, Defendant, using the Accused Products, performs a method, comprising: selecting a user's communications device from a plurality of communications devices to communicate data between a personal digital gateway and the selected communications device, the data associated with a common user of the personal digital gateway and of the selected communications device; storing profiles for each of the user's communications devices; retrieving a profile associated with the selected communications device; interpreting the data according to a rule-based engine to categorize the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; processing the data according to an edge side assembler; and communicating the data and the profile to the selected communications device.

34.     Defendant had knowledge of the '464 patent at least since April 18, 2023.[2]

35.     Since at least April 18, 2023, Defendant has indirectly infringed and continues to indirectly infringe the '464 patent by inducing others to directly infringe the '464 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '464 patent by providing or requiring use of the Accused

---

[2] On April 18, 2023, IoT Innovations filed a patent infringement action against Monitronics International, Inc. (now, BH Security LLC) d/b/a Brinks Home. *See IoT Innovations LLC v. Monitronics International, Inc. d/b/a Brinks Home*, Civ. A. No. 2:23-cv-00177, Dkt No. 1 (E.D. Tex. Apr. 18, 2023).  The asserted patents in that action included U.S. Patent Nos. 7,379,464, 7,165,224, 7,539,212, 7,593,428, 7,643,423, 7,974,260, and 7,974,266.

Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '464 patent, including, for example, claim 1. *See* Exhibit A.

36.     Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendant has been performing these steps, which constitute induced infringement, with the knowledge of the '464 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '464 patent. Defendant's inducement is ongoing. *See* Exhibit A.

37.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '464 patent. Defendant has contributed and continues to contribute to the direct infringement of the '464 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '464 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '464 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* Exhibit A.

38.      Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Plaintiff's patent rights.

39.      Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

40.      Defendant's direct infringement of the '464 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.  *See supra* at note 2.

41.      Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II.      INFRINGEMENT OF U.S. PATENT NO. 7,539,212

42.      Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

43.      The USPTO duly issued U.S. Patent No. 7,539,212 (hereinafter, the "'212 patent") on May 26, 2009, after full and fair examination of Application No. 10/300,668, which was filed on November 19, 2002.  *See* '212 patent at 1.

44.      IoT Innovations owns all substantial rights, interest, and title in and to the '212 patent, including the sole and exclusive right to prosecute this action and enforce the '212 patent against infringers and to collect damages for all relevant times.

45.      IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '212 patent.

46.    The claims of the '212 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

47.    The written description of the '212 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.    Defendant has directly infringed one or more claims of the '212 patent by using, providing, supplying, or distributing the Accused Products.

49.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '212 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,539,212).

50.    For example, as detailed in Exhibit B, Defendant, using the Accused Products, performs a method, comprising: receiving a radio link control data flow at a first rate from a core network for communication to a user equipment; preparing a plurality of media access control data flows, at a media access sublayer, each of a lower rate than said first rate, so as to convey the radio link control data flow to the user equipment; including with the plurality of media access control data flows information indicating how the media access control data flows are to be combined by the user equipment into the radio link control data flow; and providing the plurality of media access control data flows for communication to the user equipment.

51.     Defendant had knowledge of the '212 patent at least April 18, 2023. *See supra* at note 2.

52.     Since at least April 18, 2023, Defendant indirectly infringed the '212 patent by inducing others to directly infringe the '212 patent. Defendant induced customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '212 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '212 patent, including, for example, claim 1. *See* Exhibit B.

53.     Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendant has been performing these steps, which constitute induced infringement, with the knowledge of the '212 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '212 patent. *See* Exhibit B.

54.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '212 patent. Defendant has contributed and continues to contribute to the direct infringement of the '212 patent by its customers, personnel, and contractors. The Accused Products have special features that are

specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '212 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '212 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* Exhibit B.

55.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Plaintiff's patent rights.

56.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

57.    Defendant's direct infringement of the '212 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.  *See supra* at note 2.

58.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III.    INFRINGEMENT OF U.S. PATENT NO. 7,593,428

59.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

60.    The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

61.     IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent including the sole and exclusive right to prosecute this action and enforce the '428 patent against infringers and to collect damages for all relevant times.

62.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

63.     The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

64.     The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.     Defendant has directly infringed one or more claims of the '428 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

66.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent, as detailed in **<u>Exhibit C</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428).

67.     For example, as detailed in <u>Exhibit C</u>, Defendant, using the Accused Products, performs a method comprising receiving data from a data source at a transceiver station; and in response to

programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

68.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV.    INFRINGEMENT OF U.S. PATENT NO. 7,643,423

69.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70.    The USPTO duly issued U.S. Patent No. 7,643,423 (the "'423 patent") on January 5, 2010, after full and fair examination of Application No. 11/507,789, which was filed on August 21, 2006.  *See* '423 patent at 1.

71.    IoT Innovations owns all substantial rights, interest, and title in and to the '423 patent including the sole and exclusive right to prosecute this action and enforce the '423 patent against infringers and to collect damages for all relevant times.

72.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '423 patent.

73.     The claims of the '423 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

74.     The written description of the '423 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75.     Defendant has directly infringed one or more claims of the '423 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

76.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '423 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,643,423).

77.     For example, as detailed in Exhibit D, Defendant, using the Accused Products, performs a method comprising: transmitting, via a downlink channel, a frame to two or more communication units, a first portion of the frame including reservation set information and a second portion of the frame including allocation set information, wherein the allocation set information indicates a dynamically determined set of uplink channels that constitute an allocation set, and wherein the reservation set information indicates particular channels of the allocation set that are reserved for each of the two or more communication units; receiving uplink communications from at least one of the two or more communications units via the communications channels reserved thereto as

indicated by the reservation set.

78.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V.    INFRINGEMENT OF U.S. PATENT NO. 7,974,260**

79.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

80.    The USPTO duly issued U.S. Patent No. 7,974,260 (the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269, which was filed on September 10, 2001.  *See* '260 patent at 1. A Certificate of Correction was issued on November 29, 2011. *See id.* at 17.

81.    IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

82.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

83.    The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

84.    The written description of the '260 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

85.    Defendant has directly infringed one or more claims of the '260 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

86.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '260 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260).

87.    For example, as described in Exhibit E, the Accused Products, used by Defendant, constitute a device comprising: a processor; a non-transitory computer-readable medium including computer-executable instructions stored thereon that, if executed by the processor, cause the processor to: define a data sequence, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and an antenna configured to transmit the defined data sequence in a data communication packet to the second device in a time defined contact slot.

88.    Since at least April 18, 2023, Defendant has also indirectly infringed the '260 patent by inducing others to directly infringe the '260 patent. *See supra* at note 2.  Defendant has induced

end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '260 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '260 patent and with the knowledge that the induced acts constitute infringement. Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '260 patent. *See* Exhibit E.

89.    Defendant has also indirectly infringed by contributing to the infringement of the '260 patent. Defendant has contributed to the direct infringement of the '260 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '260 patent, including, for example, claim 1 of the '260 patent. The special features constitute a material part of the invention of one or more of the claims of the '260 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* Exhibit E.

90.    Defendant had knowledge of the '260 patent at least since April 18, 2023. *See supra* at note 2.

91.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

92.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

93.     Defendant's direct infringement of one or more claims of the '220 patent was willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent. *See supra* at note 2.

94.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI.     INFRINGEMENT OF U.S. PATENT NO. 7,974,266

95.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96.     The USPTO duly issued U.S. Patent No. 7,974,266 (the "'266 patent") on July 5, 2011, after full and fair examination of Application No. 11/778,822, which was filed on July 17, 2007. *See* '266 patent at 1. A Certificate of Correction was issued on November 22, 2011. *See id.* at 11.

97.     IoT Innovations owns all substantial rights, interest, and title in and to the '266 patent including the sole and exclusive right to prosecute this action and enforce the '266 patent against infringers and to collect damages for all relevant times.

98.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '266 patent.

99.    The claims of the '266 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

100.    The written description of the '266 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

101.    Defendant has directly infringed one or more claims of the '266 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

102.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '266 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266).

103.    For example, as described in Exhibit F, the Accused Products, used by Defendant, perform a method of classifying data comprising: receiving Internet Protocol (IP) data at a first node; classifying the IP data received at the first node based on a last destination address entry of a plurality of destination address entries in a header of the IP data; and forwarding the IP data from the first node to a second node, wherein the IP data is classified at the second node based on the last destination address entry of the plurality of destination address entries in the header of the IP data.

104.    Since at least April 18, 2023, Defendant has also indirectly infringed the '266 patent

by inducing others to directly infringe the '266 patent. *See supra* at note 2. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '266 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '266 patent, including, for example, claim 1 of the '266 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant performed these steps, which constitute induced infringement with the knowledge of the '266 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '266 patent. *See* <u>Exhibit F</u>.

105.    Defendant has also indirectly infringed by contributing to the infringement of the '266 patent. Defendant has contributed to the direct infringement of the '266 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '266 patent, including, for example, claim 1 of the '266 patent. The special features constitute a material part of the invention of one or more of the claims of the '266 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* <u>Exhibit F</u>.

106.    Defendant had knowledge of the '266 patent at least since April 18, 2023. *See supra*

at note 2.

107.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

108.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

109.    Defendant's direct infringement of one or more claims of the '226 patent was willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent. *See supra* at note 2.

110.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

111.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

112.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.  Judgment that one or more claims of each of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.  A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all

others acting in concert therewith from infringement of the '486 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of those patents by such entities;

c.  Judgment that Defendant account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements be found willful as to the '464 patent, , the '212 patent, the '260 patent, and the '266 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-Judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>November 18, 2025</u>    Respectfully submitted,

By: <u>/s/ C. Matthew Rozier</u>

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff IOT INNOVATIONS LLC*

*Admitted, Eastern District of Texas

**List of Exhibits**

1. Exhibit 1:  Webpage: Brinks Home
2. Exhibit 2:  Webpage: Americans Announce Brinks Home as Official Home Security Partner
3. Exhibit 3:  Amendment to Registration Filed with the Texas Secretary of State
A. Exhibit A:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,379,464
B. Exhibit B:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,539,212
C. Exhibit C:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,428
D. Exhibit D:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,643,423
E. Exhibit E:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,260
F. Exhibit F:  Evidence of Use Regarding Infringement of U.S. Patent No. 7,974,266